UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

American Alternative Insurance Corporation
and Royal Surplus Lines Insurance Company,
as subrogees of Brockman E. Leasing, Inc.,

    Plaintiffs,

v.                                                               Case No. 07-10658

Hunt Construction Group, Inc., f/k/a Huber,          Honorable Sean F. Cox
Hunt & Nichols, Inc.,

    Defendant.
_____/

## **OPINION & ORDER**

        Plaintiffs American Alternative Insurance Corporation and Royal Surplus Lines Insurance Company, as subrogees of Brockman E. Leasing, Inc. ("Plaintiffs") brought this suit against Defendant Hunt Construction Group, Inc., f/k/a Huber, Hunt & Nichols, Inc. ("Huber Hunt" or Defendant") seeking express contractual indemnification following a fatal accident that occurred at a construction site. Plaintiffs[1] originally asserted their indemnification claim as a cross-claim against Defendant in the state court action that was brought by the Estate of the worker that was killed in the underlying accident. In that state court action, Plaintiffs filed a motion for summary disposition seeking a ruling that Defendant was required to indemnify them as a matter of law. The trial court denied that motion, concluding that factual issues existed for

---

[1] The named Plaintiff in the state court action was Brockman E. Leasing, Inc. ("Brockman"), while the named Plaintiffs in this action are American Alternative Insurance Corporation and Royal Surplus Lines Insurance Company, as subrogees of Brockman. Defendant asserts, and Plaintiffs do not appear to disagree, that the insurers are the real parties in interest in both actions and should have been named in the state court action.

1

the trier of fact such that the indemnification issue must proceed to trial. After the parties settled with the Estate, but before a trial on the indemnification issue, the trial court dismissed Plaintiffs' cross-claim without prejudice, at Plaintiffs' request. Plaintiffs then filed this action in federal court asserting a claim for express contractual indemnification.

The matter is currently before the Court on three motions: 1) Defendant's *Colorado River* Motion to Abstain; 2) Defendant's *Rooker-Feldman* Motion to Stay or Dismiss; and 3) Defendant's Motion to Certify Question to Michigan Supreme Court. The Court heard oral argument on December 6, 2007, at which time Defense counsel acknowledged that the Motion to Certify Question to the Michigan Supreme Court and the *Colorado River* Motion should be denied as moot. Thus, the only motion that remains for decision is Defendant's *Rooker-Feldman* Motion to Stay or Dismiss. For the reasons set forth below, the Court shall DENY that motion.

## BACKGROUND

Following an accident at the construction site at the Ford Field project in which Gjon Gojcaj was killed, the personal representative of Gjon Gojaj ("the Estate") filed suit in Wayne County Circuit Court on or about July 30, 2002. The Estate filed that suit against several parties, including: 1) Brockman, the entity that owned and leased the aerial lift that was involved in the accident; and 2) Huber Hunt, a contractor that leased the aerial lift from Brockman.

Brockman filed an express contractual indemnity cross-claim against Huber Hunt. It does not appear that Huber Hunt filed any cross-claims against Brockman.

On or about August 2, 2004, Brockman filed a Motion for Summary Disposition in which it sought a ruling that, as a matter of law, it was entitled to be indemnified based on the express language of the indemnification clause in a contract between Brockman and Huber Hunt. The

2

state court judge, the Honorable John A. Murphy, issued a 22-page Opinion & Order denying Brockman's motion on February 15, 2005. (*See* Ex. A to Def.'s *Colorado River* Motion to Abstain). Thus, the state court judge ruled that Brockman's claim for contractual indemnification was to proceed to trial.

Brockman filed an application seeking leave to file an interlocutory appeal of that ruling. The Michigan Court of Appeals, however, denied the application "for failure to persuade the Court of the need for immediate appellate review" in an Order dated April 13, 2005. (*See* Ex. B to Def.'s *Colorado River* Motion to Abstain).

Meanwhile, on March 16, 2005, the Defendants agreed to settle the Estate's claims against them. (*See* Ex. C to Def.'s *Colorado River* Motion to Abstain). Brockman and Huber Hunt expressly exempted the indemnity dispute, and allocations of fault, from the settlement.

Thus, after March 16, 2005, it appears that the only claim that remained in the state court action was Brockman's claim for contractual indemnification against Huber Hunt.

On November 9, 2005, Brockman filed a Motion for Voluntary Dismissal in which it stated that it "would like to pursue its indemnification claim in federal court," and therefore requested that the trial court allow it to voluntarily dismiss its cross-claim without prejudice. (*See* Ex. E to Def.'s *Colorado River* Motion to Abstain). In that motion, Brockman stated that "any discovery conducted on [its cross-claim] can, and will, be used when Brockman files its indemnification claim in federal court." (*Id*. at 3). Judge Murphy granted that motion. (*Id*. at 10). Plaintiff states that the implementing Order was entered on January 3, 2006.

Huber Hunt appealed the trial court's order granting the voluntary dismissal without prejudice.

3

On February 13, 2007, while the appeal of the voluntary dismissal was still pending, Plaintiff filed this action in federal court, based on diversity jurisdiction, seeking contractual indemnification from Defendant.

On May 7, 2007, the Michigan Court of Appeals affirmed the trial court's order dismissing the state court action without prejudice in an unpublished opinion. Thereafter, Huber Hunt filed an application for leave to appeal in the Michigan Supreme Court.

On August 15, 2007, Defendant filed the following three motions in this action: 1) *Rooker-Feldman* Motion to Stay or Dismiss; 2) *Colorado River* Motion to Abstain; and 3) Motion to Certify Question to Michigan Supreme Court.

In an Order issued September 10, 2007, the Michigan Supreme Court denied Huber Hunt's motion for leave to appeal to that court. At the December 6, 2007 hearing, Defense counsel conceded that Defendant's Motion to Certify Question to Michigan Supreme Court, and its *Colorado River* Motion, were rendered moot by that action and should therefore be denied. Thus, only the *Rooker-Feldman* Motion remains for decision by the Court.

## ANALYSIS

In its motion, Huber Hunt asserts that this Court lacks subject matter jurisdiction over this action under the *Rooker-Feldman* doctrine because Plaintiff is seeking, in substance, appellate review of the state court's order denying Plaintiff's motion for judgment as a matter of law with respect to its indemnification claim. Huber Hunt notes that while the doctrine speaks of state court "judgments," there is case law indicating that the doctrine can be applied to interlocutory orders and it is therefore not confined to judgments. It also asserts that there is no "independent claim" in this action because this case is "a pure rehash of the State Court

Litigation where Brockman twice lost on its quest to achieve indemnification as a matter of law." Huber Hunt contends that Plaintiff is forum shopping and blatantly seeking a "second bit at the apple," after having lost its motion for summary disposition before the state court.

For the reasons below, the Court concludes that it does not lack subject matter jurisdiction over this action under the *Rooker-Feldman* doctrine.

"Generically stated, the *Rooker-Feldman* doctrine stands for the unremarkable proposition that a federal district court lacks subject matter jurisdiction to review a state court judgment." *Pittman v. Cuyahoga County Department of Children and Family Svs.*, 241 Fed. Appx. 285, 287 (6th Cir. 2007). The doctrine originated from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"In the years following the *Feldman* decision, the lower courts gradually expanded the doctrine's amorphous application until, recently, the Supreme Court issued its decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), clarifying and restricting the doctrine's scope." *Pittman,* 241 Fed. Appx. at 287. In *Exxon Mobil*, the Court stressed the "narrow" and "limited" application of the doctrine. Accordingly, following *Exxon Mobil*, the Sixth Circuit has narrowed its application. *Id.*

In *Exxon Mobil*, the Court held that the doctrine was confined to cases of the kind from which the doctrine acquired its name, and further explained:

> In both cases, the losing party in state court filed suit in federal court after the state court proceedings ended, *complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.* Plaintiffs in both cases, alleging federal question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

5

*Exxon Mobil,* at 1526 (emphasis added).

Following *Exxon Mobil,* the Sixth Circuit stressed "that the *Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap. The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action." *McCormick*, 395.

Thus, the *Rooker-Feldman* doctrine precludes jurisdiction over a complaint, or over specific claims in a multi-count complaint, when those claims assert an injury caused by the state court judgment. Jurisdiction is not precluded over claims that are "independent" of the state court judgment. *McCormick* at 391-93

In *McCormick*, the Sixth Circuit noted that the "question naturally arises as how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction." *Id.* at 393. The key to that inquiry "is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id*. The Sixth Circuit cited with approval an example given by the Second Circuit:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same

6

> suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*McCormick*, at 394 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)). Again, the "key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *McCormick* at 394.

Accordingly, in order to determine if this action is barred by the *Rooker-Feldman* doctrine, the Court must examine the nature of the complaint in this action.

Plaintiffs' complaint in this action asserts just one claim – a claim against Defendant for express contractual indemnification. The complaint asserts that Defendant caused Plaintiffs' injury by not indemnifying it with respect to the Estate's claims against Plaintiffs, although it had undertaken an express contractual obligation to do so. The complaint does not allege any injury from any judgment or order issued in the state court action. Thus, the claim is an independent claim that is not barred by the *Rooker-Feldman* doctrine and this Court does not lack subject matter jurisdiction over this action. The Court must therefore deny Plaintiffs' motion.

## CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that:

1) Defendant's *Rooker-Feldman* Motion to Stay or Dismiss [Docket Entry No. 9] is **DENIED;**

2) Defendant's *Colorado River* Motion to Abstain [Docket Entry No. 10] is **DENIED AS**

**MOOT;** and

3) Defendant's Motion to Certify Question to Michigan Supreme Court [Docket Entry No. 11] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

                                                S/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: December 18, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 18, 2007, by electronic and/or ordinary mail.

                                                S/Jennifer Hernandez
                                                Case Manager